Filed 4/21/26  In re N.P. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re N.P., a Person Coming Under the Juvenile Court Law. | |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>A.P.,<br><br>　　　　Defendant and Appellant. | C104076<br><br>(Super. Ct. No. STK-JD-DP-2024-0000262) |

The juvenile court terminated father A.P.'s parental rights pursuant to section 366.26 of the Welfare and Institutions Code.[1]  Father appeals, arguing the court: (1) denied him due process by terminating his parental rights when father did not appear at the hearing and father's attorney sent a substitute attorney to the hearing and (2) denied him effective assistance of counsel by proceeding with the substitute attorney.  We

_____

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

conclude that the court did not deny father due process and that father has not demonstrated that his attorney's performance prejudiced him. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2024, the San Joaqin County Human Services Agency (Agency) took newborn N.P. into protective custody and gave notice to mother and father that it would hold a detention hearing in five days. Father did not appear at the detention hearing, though the Agency's attorney informed the juvenile court that father had told a social worker that he was "downstairs trying to clear some warrants." The court found that father had received proper notice and declined to continue the hearing. The court then found the Agency made the required showing and ordered N.P. detained. Before the hearing concluded, father arrived, and the court appointed counsel for him. The court told father the date and time for the jurisdictional hearing and ordered him to be present, stating: "make sure that you are there, if you are not there, the hearing goes forward without you. Make sure that you are on time Thursday, August 29th, 1:30 in [this department] 9D."

At the August 29 hearing, father and his attorney appeared, though father was not present for the entire hearing. The juvenile court ordered father to undergo genetic testing to prove he was N.P.'s father and continued the jurisdictional hearing until October 10, 2024. The court ordered father to be present for the hearing.

Father did not appear at the October 10 hearing, and his attorney did not provide any explanation for his absence to the juvenile court. The Agency's attorney informed the court that father failed to show up to his appointment for the paternity test. The court found that father had received proper notice of the hearing and there was no legal cause to continue the hearing. Accordingly, the court found that father knowingly and voluntarily waived his rights by not appearing. The court adjudicated N.P. a dependent child, removed N.P. from mother's custody, placed N.P. with the Agency, and ordered

2

that mother not be provided reunification services. The court required father to prove paternity to receive reunification services.

At a November 2024 ex parte hearing to authorize N.P. to travel out of state with his caregivers, the juvenile court received the results of father's paternity test and found him to be N.P.'s biological father. The court set a dispositional hearing for father. Father appeared at the hearing with a substitute attorney "specially appearing" on behalf of his appointed attorney. The court found good cause to continue the hearing until January 9, 2025. The court also ordered father to be present and noted that it would proceed without him.

Father did not appear for the January 9 hearing. Father's attorney asked if father had been given notice of the hearing, and the juvenile court found that notice had been given as required by law. Father's attorney stated that he was going to ask for a continuance but "[i]f the [c]ourt doesn't allow us to set it and proceeds with the report, we'd submit and object." Father's attorney did not provide any explanation for father's absence. The court adopted the findings and orders in the social worker's report and set a hearing on May 7, 2025, to select a permanent plan for N.P.

On February 6, 2025, the Agency served on father and his appointed attorney notice of the May 7 hearing indicating its recommendation that the juvenile court terminate father's parental rights and implement an adoption plan for N.P. The notice indicated that "[t]he court will proceed with this hearing whether or not you are present." In April 2025, the Agency filed a report recommending that the court terminate father's and mother's parental rights and free N.P. for adoption. The Agency served the report on father and his appointed attorney. The report indicated that father attended the first five weekly visits with N.P. in January and February 2025, but he missed five of the most recent seven visits without calling to explain his absence. Father did not appear for the May 7 permanent plan hearing, but his appointed attorney appeared. The court continued the hearing to May 28, 2025.

3

The Agency served notice of the continued hearing on father. The notice indicated that "[t]he court will proceed with this hearing whether or not you are present." Father did not appear on May 28, 2025. A substitute attorney appeared on behalf of his appointed counsel. The juvenile court asked where father was, and his substitute attorney responded, "He's not present." "I'm not sure if [appointed attorney] spoke to him." Father's substitute attorney asked the court to continue the hearing, but the court declined, so the attorney objected to the termination of parental rights. The court found that father had been given notice of the hearing. The court also found that: (1) N.P. would likely be adopted, (2) terminating father's parental rights is in N.P.'s best interest and not detrimental, and (3) none of the exceptional circumstances in section 366.26, subdivision (c)(1) exist. Accordingly, the court terminated father's parental rights.

Father filed a timely notice appealing from the termination of his parental rights.

DISCUSSION

Father contends the juvenile court erred in two ways: (1) denying him due process by terminating his parental rights when he did not appear at the hearing and his attorney sent a substitute attorney to the hearing, and (2) denying him effective assistance of counsel by proceeding with the substitute attorney. We conclude father has not demonstrated prejudicial error.

A.      Due Process

" '[P]arents are entitled to due process notice of juvenile proceedings affecting their interest in custody of their children.' " (*In re Anna M.* (1997) 54 Cal.App.4th 463, 468.) But the right to due process does not prevent a court from proceeding in the absence of a parent. Rather, the right to due process merely requires that the parent receive "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Ibid.*) "When a parent is absent without good cause at a properly noticed hearing, the court is entitled to proceed in the parent's absence. [Citation.] A parent's

4

failure to appear will not normally constitute the good cause necessary to justify a continuance [citation], because substantial importance is attached to "the child's need for a prompt resolution of the matter" [citations].  An unjustified failure to appear at a duly noticed hearing reflects a parent's choice not to attend.  [Citation.]  A court may properly treat this choice as a waiver of the right to be present *at that hearing* and of the benefits of being present.  Imposing this waiver is a sensible and limited response to the parent's decision to be absent.  Further, allowing the court to proceed in the parent's absence should ensure that the court, the minor and the other parties are not unduly disadvantaged." (*In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1131-1132 [footnote omitted].)

Here, father does not contend lack of proper notice of the termination hearing.  Rather he contends, "[t]hrough circumstances beyond [father's] control, and without [father's] knowledge, [his] attorney failed to appear for the selection and implementation hearing."  But he does not cite any evidence to support this assertion.  Accordingly, the court properly treated his failure to appear as a waiver of his right to appear and proceeded in his absence to select a permanent plan in N.P.'s best interest.

Father also contends that his representation at the hearing by a substitute attorney contributed to the deprivation of his right to due process.  Father cites cases dealing with the right to appointment of counsel as an aspect of the right to due process.  (See, e.g., *Lassiter v. Dep't of Social Services* (1981) 452 U.S. 18, 32-33; *In re Ronald R.* (1995) 37 Cal.App.4th 1186, 1196-1197.)  Father does not contend that the juvenile court failed to appoint counsel for him, so these cases are inapplicable.  We also note that a party represented by a substitute attorney making a "special appearance" on behalf of the party's attorney is represented by that substitute attorney.  (*Streit v. Covington & Crowe* (2000) 82 Cal.App.4th 441, 444-446 & fn. 2 [explaining that "an attorney making a special appearance is associated with the party's attorney of record" and "if that were not the case, the specially appearing attorney would not be allowed to

be heard"].) Thus, father's suggestions that he was not represented at the hearing simply because his appointed attorney was not present lack merit. To challenge representation by the substitute attorney, father must establish that the attorney performed ineffectively. We turn there next.

B.     Effective Assistance of Counsel

Father contends the juvenile court denied him effective assistance of counsel under the United States Constitution by proceeding to terminate his parental rights when a substitute attorney was standing in for his appointed attorney. We conclude father has not established that he was prejudiced by substitute attorney's performance.

"[U]nder California law, every parent facing termination of parental rights is entitled to competent representation." (*In re A.R.* (2021) 11 Cal.5th 234, 246; see §§ 317, 317.5, 366.26, subd. (f)(2).) In some cases, "[d]epending on the circumstances of the case, constitutional due process [also] demands the appointment of counsel for a parent facing the termination of rights." (*In re A.R.* at p. 245.) Depending on the source of the right to counsel, reviewing courts use slightly different tests to determine whether the denial of competent counsel requires reversal of a lower court's order. To establish a violation of the statutory right to competent counsel, a parent must show " 'that counsel failed to act in a manner to be expected of reasonably competent attorneys practicing in the field of juvenile dependency law' " and that " 'it is reasonably probable that a result more favorable to [the parent] would have been reached in the absence of the error.' " (*Id.* at pp. 251-252.) To establish a violation of the constitutional right to competent counsel, a parent must establish "that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.)

Under either standard, father has failed to demonstrate prejudice. First, father claims that substitute attorney "was not familiar with the case, the evidence, and

6

particularly [father]'s evidence." But he fails to cite to anything in the record to establish this lack of familiarity or the existence of any helpful evidence unknown to substitute attorney. The only evidence father cites is evidence from the Agency's reports, which was already before the juvenile court. Without identifying evidence that his attorneys failed to present, father cannot establish that an attorney who was more familiar with his case would have presented evidence that either would have (1) made it reasonably probable that a result more favorable to him would have been reached; or (2) made it such that the result would have been different. Second, father claims that, "[i]f he had been present, [father]'s [appointed] attorney could have assisted [father] by presenting his position regarding the possible termination of his parental rights." Again, father fails to identify what action the appointed attorney could have taken that either would have made it reasonably probable a result more favorable to him would be reached or that the result would have been different. In sum, father has failed to establish prejudice.

DISPOSITION

The order terminating father's parental rights is affirmed.

_____
MESIWALA, J.

We concur:

_____
EARL, P. J.

_____
HULL, J.